IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S LONDON SUBSCRIBING TO POLICY NO. GL1580/01/AM1723, | : : : : | |
| Plaintiff, | : : | CIVIL ACTION |
| v. | : : | NO. 15-2876 |
| CATA CONSTRUCTION, et al., | : : | |
| Defendants. | : : | |

# MEMORANDUM

**Tucker, C.J.**                                                                                           **January 13, 2017**

Before the Court are Plaintiff's uncontested Motion for Summary Judgment (Doc. 14)[1] and Plaintiff's Memorandum of Law in Support thereof (Doc. 14-1). Upon consideration of Plaintiff's submissions and exhibits, Plaintiff's Motion for Summary Judgment is GRANTED.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an insurance company, brings this suit seeking declaratory judgment regarding an insurance policy that it issued to its insured, Defendant Cata Construction ("Cata").[2] Specifically, Plaintiff seeks a declaration that it owed no duty to defend or indemnify its insured in connection with an underlying state lawsuit by Defendant Pulte Group, Inc. ("Pulte") against Defendant Nassau Construction Company ("Nassau") for work that Nassau and Cata, as Nassau's subcontractor, performed on a residential construction project known as the Traditions

---

[1] To date, none of the Defendants in this case have filed cross-motions for summary judgment or otherwise filed responses in opposition to Plaintiff's Motion for Summary Judgment. Accordingly, pursuant to E.D. Pa. Local R. Civ. P. 7.1(c), the Court treats the present Motion for Summary judgment as "uncontested" as explained in greater detail below in Section II.A.

[2] On April 15, 2016, this Court issued an Order (Doc. 11) granting Plaintiff's request for default against Cata as well as Defendant Nassau Construction Company after both failed to file responsive pleadings to Plaintiff's Complaint.

1

at Washington Crossing, located in Bucks County, Pennsylvania ("Washington Crossing Project"). Plaintiff contends that it owes no duty to defend or indemnify its insured because, in the underlying action, Pulte alleged that it suffered damages stemming from Cata's and Nassau's faulty workmanship. Faulty workmanship, Plaintiff reasons, does not trigger coverage under the governing insurance policy and, therefore, Plaintiff is entitled to summary judgment.

### A. Underlying State Court Lawsuit Over The Washington Crossing Project

In September 2010, Pulte filed a complaint against various construction contractors that it had hired to perform work on the Washington Crossing Project.[3] After several amendments to its complaint, Pulte finally filed a Fourth Amended Complaint in which it alleged that Nassau was liable for damages incurred in connection with purportedly defective decks and patio doors that Nassau and/or its subcontractors installed on 299 homes in the Washington Crossing Project. Pl.'s Mem. of Law in Supp. Ex. 1-b, at 3 ¶ 8. The Fourth Amended Complaint set forth two causes of action against Nassau: Count 3 (Negligence) and Count 4 (Breach of Contract). *Id*. at 11–18. Both counts set forth a number of factual allegations indicating that Nassau and/or its subcontractors failed to perform a variety of construction tasks properly. *Id*.

#### 1. Joinder Complaint By Nassau Against Cata

Later, and as a result of Pulte's Fourth Amended Complaint, Nassau filed an Amended Joinder Complaint in which Nassau asserted claims against 18 subcontractors who performed work on the Washington Crossing Project. Pl.'s Mem. of Law in Supp. Ex. 1-b, at 21–93. Among the subcontractors identified was Cata who had performed "cornice work" for Nassau. *Id*. at 36 ¶ 56. Nassau alleged that Cata was liable, as the cornice subcontractor, for the property damage identified in Pulte's Fourth Amended Complaint. As a result of this litigation, Nassau

---

[3] The underlying state court case is docketed in the Court of Common Pleas of Bucks County bearing docket number 2010-08958.

notified Plaintiff that the underlying state court action might trigger coverage under a Commercial General Liability Policy that Cata had obtained from Plaintiff.  *See* Pl's Mem. of Law in Supp. Ex. 1-c, at 44–48 (indicating that Nassau notified Plaintiff of Plaintiff's potential obligation to cover damages alleged in the underlying state court action).

        **B.**        **The Commercial General Liability Policy: Coverages and Definitions**

The Commercial General Liability Policy, CGL Policy GL1580/01AM1723 ("CGL Policy"), was issued by Plaintiff to Cata, and was in effect during the time that Cata performed work on the Washington Crossing Project.  *See* Pl.'s Mem. of Law in Supp. Ex. 1-c, at 17 (providing that the "policy period" ran from "23 May 2001" to "23 May 2002").  The CGL Policy delineates its scope of coverage and identifies the circumstances that would obligate Plaintiff to defend and indemnify Cata under Section I.  Section I provides, in pertinent part:

> **COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> . . . .
>
> We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.
>
> . . . .
>
> <u>This insurance applies</u> to 'bodily injury' and 'property damage' <u>only if</u>: (1) [t]he <u>'bodily injury' or 'property damage' is caused by an 'occurrence'</u> . . . and (2) [t]he 'bodily injury' or 'property damage' occurs during the policy period.

Pl.'s Mem. of Law in Supp. Ex. 1-c, at 25 (emphasis added).

The CGL Policy definitions for important terms including a definition for the term "occurrence," which means, "<u>an accident</u>, including continuous or repeated exposure to substantially the same or general harmful conditions."  Pl.'s Mem. of Law in Supp. Ex. 1-c, at 36

(emphasis added). The definition for the term "occurrence" is further defined by an Endorsement attached to the CGL Policy, which provides "[w]hen used in this policy . . . . 'occurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Id.* at 24.

## II.     LEGAL STANDARD

As a preliminary matter, the Court addresses the implications of Defendants' failure to respond to the present Motion for Summary Judgment.

### A.     Standard Of Review For Summary Judgment Motions

When a party fails to respond to a properly filed motion, the Court may treat the motion as uncontested. E.D. Pa. Local R. Civ. P. 7.1(c). In the case of a motion for summary judgment, however, the Court "may not grant an uncontested summary judgment motion without an independent determination that the movant is entitled to judgment under Fed. R. Civ. P. 56." *B&B Fin. Servs. LLC v. Kallock*, No. CIV. A. No. 05-1277, 2006 WL 2869529, at *1 (E.D. Pa. Oct. 4, 2006); *see Hitchens v. County of Montgomery*, 98 Fed. App'x 106, 110 (3d Cir. 2004) (providing the same). Still, "[b]y failing to respond . . . 'the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion.'" *Kallock*, 2006 WL 2869529, at *1 (citing *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003)). Thus, when a party fails to respond, the court may consider the facts stated in the motion for summary judgment "undisputed for the purposes of the motion." *Goodwin v. Kope*, CIV. A. No. 13-1290, 2016 WL 3087389, at *2 (E.D. Pa. June 2, 2016).

The standard governing review of motions for summary judgment is otherwise well-established. Under Federal Rule of Civil Procedure 56,

> summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Pennsylvania Law Applies

Generally, when a federal court sits in diversity, the court will apply the forum state's substantive law while adhering to federal procedural law. *See, e.g.*, *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

In this case, Pennsylvania substantive law applies. Pennsylvania law applies because: (1) Plaintiff relies heavily upon Pennsylvania law in support of its uncontested Motion for Summary Judgment, (2) Defendants have raised no objection to the application of Pennsylvania law,[4] (3) the Washington Crossing Project from which this dispute arises is located in Pennsylvania, and (4) all parties are subject to the personal jurisdiction of this Court having conducted significant business dealings in Pennsylvania, in fact, Pulte is a Pennsylvania corporation. For these reasons, Pennsylvania law applies.

### III. DISCUSSION

Plaintiff argues that it is entitled to summary judgment for two reasons. First, Plaintiff argues that the underlying state lawsuit does not trigger Plaintiff's duty to defend and indemnify

---

[4] *See, e.g.*, *Lublin v. Am. Fin. Grp., Inc.*, 960 F. Supp. 2d 534, 539 (E.D. Pa. 2013) (holding that where the litigants relied on Pennsylvania law in their written submissions to the court, the issue of what substantive law applies, to the extent there was any issue, was waived); *McMahon v. State Farm Fire & Cas. Co.*, CIV. A. No. 06-3408, 2007 WL 1377670, at *3 (E.D. Pa. May 8, 2007) (holding that where litigants "relied primarily on the laws of the Commonwealth in their pleadings, and have not raised an objection to the application of Pennsylvania law," the parties waived any objection, to the extent any existed, to the application of Pennsylvania substantive law).

Cata, as Plaintiff's insured, because the lawsuit fails to allege facts sufficient to constitute an "occurrence" as defined by the CGL Policy.  Second, Plaintiff argues that Cata failed to cooperate in good faith with Plaintiff's investigation into the underlying lawsuit thereby alleviating Plaintiff of any duty to defend or indemnify Cata.  As the Court agrees with Plaintiff's first argument, the Court will not address Plaintiff's second.

### A. Existence Of A Duty To Defend Or Indemnify: Two-Step Analysis

Under Pennsylvania law, when faced with an action seeking declaratory judgment that an insurer need not defend or indemnify its insured in connection with a third-party lawsuit, the court must engage in a two-step analysis.  *General Accident Ins. Co. of America v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 596 (3d Cir. 2009).

#### 1. Determination Regarding The Scope Of Coverage

The first step of the analysis requires that the Court "determine the scope of the policy's coverage."  *General Accident Ins. Co. of America*, 692 A.2d at 1095.  Determining the scope of an insurance policy is a question of law as it involves the interpretation of the insurance policy. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Company*, 908 A.2d 888, 896 (Pa. 2006).  When interpreting an insurance policy, the court must "ascertain [and give effect to] the parties' intentions as manifested by the policy's terms." *Id*.  It is also helpful to bear in mind the purpose of CGL policies, which is "to protect the insured from essentially accidental injury to the person or property of another rather than coverage for disputes between parties to a contractual undertaking."  *Nationwide Mut. Ins. Co.*, 562 F.3d at 598 (citing *Pennsylvania Mfrs.' Ass'n Ins. Co. v. L.B. Smith, Inc.*, 831 A.2d 1178, 1181 (Pa. Super. Ct. 2003)).  For this reason,

CGL policies generally do not extend coverage to lawsuits involving disputes over contractual obligations.  *Id*.

### 2. Examination Of The Underlying Complaint

After "determining the scope of coverage," the second step of the analysis requires that the Court "examine the complaint in the underlying action to ascertain if it triggers coverage." *L.B. Smith, Inc.*, 831 A.2d at 1181.  Examination of the complaint requires that the court liberally construe the factual allegations of the complaint in favor of the insured.  *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)).  The court must focus on the factual allegations of the complaint and not merely the complaint's alleged causes of action.  *State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.*, No. CIV.A. 14-03987, 2015 WL 894419, at *1 (E.D. Pa. Mar. 3, 2015); *see also Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (stating that "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered.  Instead[,] it is necessary to look at the factual allegations contained in the complaint").

### B. Scope Of Coverage Under The CGL Policy

Under the plain terms of the CGL Policy, Plaintiff's duty to defend and indemnify Cata arises only when Cata is sued for "bodily injury" or "property damage" that is caused by an "occurrence."  Pl.'s Mem. of Law in Supp. Ex. 1-c, at 25.  An "occurrence" is defined as an "accident."  *Id*. at 24.  The CGL Policy, however, provides no definition for the term "accident."  In the absence of a specific definition for the term "accident" under an insurance policy, Pennsylvania courts have held that the word means "an unexpected and undesirable event occurring unintentionally, and that the key term in the definition of the 'accident' is 'unexpected'

which implies a degree of fortuity." *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 292 (Pa. 2007) (citing *Kvaerner*, 908 A.2d at 898).

The Pennsylvania Supreme Court case of *Kvaerner* illustrates how this definition applies to a case involving claims for faulty workmanship. In that case, Kvaerner, a manufacturer and installer of industrial products, sought defense and indemnification from its insurer when one of Kvaerner's customers sued for breach of contract and breach of warranty arising from the failure a Kvaerner product. *Kvaerner*, 908 A.2d at 891. In essence, the customer alleged that it suffered property damage as a result of Kvaerner's faulty workmanship. *Id*. at 900. Kvaerner's insurer refused to defend and indemnify Kvaerner because any property damage that the customer may have suffered was not the result of an "occurrence" or "accident" as provided under the governing insurance policy. *Id*. at 892.

The Pennsylvania Supreme Court agreed with the insurer holding that "the definition of 'accident' required to establish an 'occurrence' under the policies cannot be satisfied by claims based upon faulty workmanship. Such claims simply do not present the degree of fortuity contemplated by the ordinary definition of 'accident' or its common judicial construction in this context." *Id.* at 899. Accordingly, *Kvaerner* "and its progeny . . . stand for the proposition that 'faulty workmanship under a contract is not sufficiently fortuitous to qualify as an 'occurrence.'" *Brighton Exteriors, Inc.*, 2015 WL 894419, at *1 (citing *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90, 92–93 (3d Cir. 2013)).

Here, the CGL Policy provides, as the insurance policy in *Kvaerner* provided, that coverage exists only where bodily injury or property damage results from an "occurrence" or "accident." As these terms are undefined, the Court interprets them to have the meaning ascribed to them by the Pennsylvania Supreme Court in *Kvaerner*. For this reason, the CGL

Policy will not obligate Plaintiff to defend or indemnify Cata in the event that Cata is sued for damages arising out of Cata's own purportedly faulty workmanship.

### C.     The Underlying Complaint: Allegations of Faulty Workmanship

Having determined the extent of coverage under the CGL Policy, the Court next turns to the underlying state lawsuit and the complaint to determine whether the factual allegations contained therein trigger coverage and Plaintiff's duty to defend and indemnify Cata.

While the underlying complaint filed in the state lawsuit alleges one count of Negligence and one count of Breach of Contract against Defendant Nassau, and against Cata by virtue of the Amended Joinder Complaint, the labeling of these causes of action is not, standing alone, dispositive of whether insurance coverage is triggered under the CGL Policy. *See Haver*, 725 A.2d at 745 (stating that "the particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead[,] it is necessary to look at the factual allegations contained in the complaint."). In fact, review of the factual allegations undergirding each of the counts reveals that Pulte ultimately traces its alleged damages to Nassau and its subcontractor's faulty workmanship.

In connection with the negligence count, the underlying complaint alleges a variety of facts showing that the gravemen of the complaint is the purportedly faulty workmanship of Nassau and its subcontractors. Among other allegations, the complaint provides:

> Plaintiff Pulte became aware, by a water intrusion specialist, that Defendant . . . [Nassau] failed to install a drip cap under the patio doors, improperly fastened the ledger board of the deck to the homes, failed to properly install felt paper under the soffit or between the back walls and the fascia, failed to properly flash under the window flanges, failed to use felt paper behind the cladding on the header, etc.
> . . . .
> Defendant [Nassau] creat[ed] a dangerous and/or defective condition, specifically, [by] installing inferior 'I-beams' without proper lag bolts causing a possible collapse of the wooden decks and negligently flashing the wooden decks, walls and patio doors

> . . . .
>
> Defendant [Nassau] was negligent . . . in the following respects:
>
>> a. failing to properly flash the wooden decks, walls, patio doors and appurtenances thereto
>>
>> . . . .
>>
>> c. installing inferior 'I-beams' and failing to use the proper lag bolts to prevent the wooden decks from collapsing;
>>
>> g. failure of the Defendants . . . to properly flash the decks/stoops
>>
>> h. failure of the Defendants . . . to properly flash the windows by installing the flashing backwards ('reverse lapping')
>>
>> i. failure of the Defendants . . . to properly flash the windows by cutting the drip caps too short thus allowing water to infiltrate the subject homes

Pl.'s Mem. in Supp. Ex. 1-b, at 3, 11, 12–13. These allegations show that, notwithstanding the characterization that the cause of action sounds in negligence, the complaint more accurately sets forth a cause of action against Nassau and its subcontractors, including Cata, for performing substandard work. Since the negligence count is, in essence, a claim for damages pursuant to faulty workmanship, and since the CGL Policy does not cover damages that are the result of faulty workmanship, Plaintiff is not obligated to defend or indemnify its insured in connection with this count.

In connection with the breach of contract count, the underlying complaint similarly alleges a variety of facts showing that the dispute arises from the purportedly faulty workmanship of Nassau and its subcontractors. Among other allegations, the complaint provides:

> Defendant [Nassau] breached [its] building contract by installing inferior 'I-beams', failing to use the proper lag bolts to prevent the wooden decks from collapsing and failing to properly install wooden deck and flash the wooden deck, walls, patio doors and appurtenances thereto

Pl.'s Mem. in Supp. Ex. 1-b, 15–16.  In essence, this count also alleges faulty workmanship and, therefore, Plaintiff is not obligated to defend or indemnify its insured in connection with this count.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's uncontested Motion for Summary Judgment is GRANTED.  An appropriate Order follows.